# IN RE: THE ESTATE OF MARC S. GUTERMA, Deceased

## Case No. 85-2671 CP

Fifteenth Judicial Circuit, Palm Beach County

December 1, 1986

### APPEARANCES OF COUNSEL

**Richard E. Bosse** for respondent.

**Steven I. Greenwald** for personal representative.

**John C. Schneider** for Robert Guterma.

## OPINION OF THE COURT

EDWARD RODGERS, Circuit Judge.

THIS MATTER came before the Court to set aside a Will. The Petitioners alleged lack of testamentary capacity, forgery and undue influence exerted by Mr. and Mrs. Samuel and Alma Katzman through their attorney, John Morrison, against Marc S. Guterma in making his will. Another issue involved was the Petitioner's request that a Michigan Court's adoption not be given full faith and credit by the Florida Courts.

The first issue the Court would like to discuss is that pertaining to the charge of forgery in the signing of the Will. A great deal of testimony was presented from experts and friends comparing the signature of the deceased. The Court heard from childhood friends of the decedent who stated that his signatures on the Will did not look like the signatures they had seen. The Court heard from several experts in the area of handwriting and they had indicated from the comparison of the known signatures of the decedent with the signature on the Will, it did not appear to be Marc Guterma's signature. There was some testimony by the Respondents that some of the signatures used by the experts and witnessed by witnesses who testified may not have been Marc Guterma's and that Marc was in the habit of letting others use his credit cards from time to time. This may have accounted for some of the discrepancies in the way the signatures looked. There was some testimony that Sam Katzman and John Morrison may have also signed Marc's name from time to time.

At any rate, the Court reached a finding that there was no forgery involved in the execution of the Will. As a result, the charge of forgery was dismissed at the close of the Petitioner's case. The basis for the Court's finding of no forgery was largely because of the direct testimony of the two witnesses who witnessed the signing of the Will. Also the Court was not impressed with the handwriting experts. Most convincing was the witness, Cheryl Oligler. She, at one time, worked for Mr. Bosse, the attorney for the Respondent. She also had been fired by Mr. Morrison, the attorney for Petitioner. She certainly had no interest in the outcome of the case and would have been more loyal to Mr. Bosse than Mr. Morrison. She stated that she knew the decedent, Marc Guterma, and she personally say him sign the Will. It doesn't get much better than eye witness testimony so the Court dismissed the issue of forgery at the close of the Petitioner's case.

The background of the case is a series of tragic evens. Robert's

father, Alexander, married Marc's mother, Sandra. After the marriage, Robert's father adopted all of the minor children of Sandra. Alexander and Sandra, along with the step brothers and sisters of Robert were killed in an airplane crash. Marc was seriously injured in the same airplane crash. After the airplane crash, the maternal grandparents of Marc, Samuel and Alma Katzman, seemed to take Marc under their custody and control and guided him through his minority state. During this time, Marc was a minor approximately 14 years old. The Katzmans made arrangements for him to live with a housekeeper in the Boca Raton area.

Robert's father, Alexander, was a very wealthy person and owned quite a bit of property and several companies. Prior to his death, Alexander Guterma had placed the stock certificates in his wife's name solely for a specific purpose. After the death of the family in the airplane crash, Samuel Katzman took over the companies and properties of Alexander. A lawsuit or several lawsuits were carried out by Robert in an effort to regain Alexander's property from Samuel Katzman, who had taken over based upon the stock certificates being in Sandra's name.

A lawsuit was ultimately settled by way of an agreement on August 22, 1982. The lawsuit involving the Kentucky property was split 50/50 between Marc and Robert as brothers. However, what had happened in the meantime was that a Petition for Adoption was filed in February, 1980. Robert was unaware of the petition and was of the impression that Marc was still his brother. In fact, Marc was adopted in April of 1980. At this time, Mr. Morrison, the attorney for the Petitioner, Samuel Katzman, Alma Katzman, and Marc Guterma all were aware of the adoption. The adoption was approximately two years prior to the agreement splitting the Kentucky property 50/50.

Robert Guterma considers this as a fraud upon him and the Courts because he claims he never would have consented to the 50/50 split had he known that he and Marc were not brothers and that Marc had in fact been adopted into another family. No issue was raised as to whether or not Marc's right as an adopted son vested at the time of the death of Alexander, his adopted father, and his mother, Sandra.

At any time, after the adoption, Samuel Katzman and Alma Katzman continued to guide Marc's life in great detail. There was no question but that they took the place of his parents in determining where he lived and how he lived and provided for all of his needs. In August, 1985, Marc was on a trip to Dallas and was killed in the airplane crash that took place there.

Marc had made a Will which was dated March 27, 1981, a day or two after his 18th birthday and in that Will, Marc left everything to Samuel Katzman. This provides the basis for Robert's claim in fact for undue influence, forgery, the request not give the full faith and credit to the Michigan adoption, and all of the other requests for relief in this case. Robert thought all along that Marc was his brother and as a result, he should have been inheriting from Marc's death and not Samuel Katzman. Robert had been deceived.

There was a great deal of testimony to show that Marc was influenced by Samuel Katzman in that Mr. Katzman controlled his life and his money and where he lived and all aspects of his life.

The leading case in this area of undue influence is *In Re: Estate of Carpenter*, 252 So.2d 697. That case sets the guidelines and criteria for evaluating undue influence and the case states:

"Where a presumption of undue influence was raised by will contestants, proponent had the burden of coming forward with a reasonable explanation for her active role in the testatrix's affairs."

In the instant case, having listened to the evidence for over a week, the Court finds that the presumption of undue influence has been quite adequately rebutted.

These intrusions into Marc's life appeared to the Court to be those that you would expect any grandfather to usurp in any family situation, involving a child of 14 years old belonging to his daughter. Marc had just turned 19 or 20 at the date of his death. So for a period of time, from 1977 when his family was killed, his grandfather was all that he had.

After Marc's death, Samuel Katzman also died and now the beneficiary of Marc's estate becomes Samuel's wife, Alma Katzman. A great deal of testimony was given as to Marc's inability to get along with Alma. It appeared that he liked Sam and relied and depended upon him very much, however, his relationship with Alma was not nearly as loving as it was with Sam. None of this, however, impressed the Court to the point that this was a cognizable undue influence exercised on Marc or misplaced affection directed by his will.

It is lamentable that Attorney Morrison and Samuel Katzman were aware and had perpetrated the adoption of Marc two years prior to the agreement for settlement by Robert and Marc without telling Robert. However, this type of deception or withholding of information by these gentlemen does not amount to undue influence of such magnitude as to rob Marc of his free will in executing his Last Will and Testament. In

88

fact, there was no one to leave his worldly possessions to except his grandfather, grandmother, and Robert. The fact that he decided to leave it to his grandfather, who I might add appeared to have help improve the initial amount that he had received from his father's estate, did not amount to undue influence per se.

There was no testimony which indicated that he and his brother, Robert, had a very close and loving relationship during the period of time that he knew him. In fact, there was some testimony that he was being influenced by his parents that his brother, Robert, was not his best friend because of a number of lawsuits that were filed after the death of the parents of Robert and Marc. Some of which were filed were caused by Robert, others were not. At any rate, the evidence was blatantly clear that Sam Katzman was perhaps the best friend and closest person to Marc after the death of his parents.

Marc's natural father also testified at the hearing and he too was left out of Marc's Will. He testified at the hearing saying that it was Marc's desire that his gramps have everything. He stated that around November of 1983, he saw the Will and discussed it with Marc and Marc had told, "He gave everything to gramps and gram." Marc's father stated that there was no doubt in his mind that that is what Marc wanted to do. He said he was testifying solely for the purpose of seeing Marc's last will and desires carried out. He further stated that Marc knew what his assets were and was fully aware of the objects of his bounty and what he wanted to do. For all of these reasons, the Court is unable to say that there was any undue influence exerted. There is no doubt in the Court's mind that Marc, although 18 years of age, exercised his own free will. There is no doubt that Robert has been deceived in this relationship, however, the deception is of foreign origin to the case at hand. The solution to the deception does not lie in this case.

A final issue is to whether or not this Court should ignore the full faith and credit requirement of the U. S. Constitution that would require this Court to accept the Michigan adoption of Marc Guterma by Sam and Alma Katzman. The law is clear that,

> "Florida Courts should not attempt to determine validity of a decree of a sister state or a foreign country unless something appears on face of record which discloses invalidity, and the most that a Florida court should do is to decide in proper cases whether foreign decrees should be accorded recognition under full faith and credit clause or rule of comity, U. S. Constitution, Article 4, Section 1." *Gaylord v. Gaylord*, 45 So.2d 507.

89

In the instant case, there was nothing on the face of the record which would disclose the invalidity of the adoption. There was an effort to have the Michigan Courts set it aside, however, this was not done by the Michigan Court.

There is believable testimony that the purpose of the adoption of Marc by his grandparents was to cut Robert out of any inheritance from Marc. That fact alone would not invalidate the adoption. There is no doubt but that Robert was deceived by the withholding of evidence of the adoption, while they were negotiating for a settlement in the case involving the Kentucky property. The matter was settled allowing 50% to each, Robert and Marc. That too does not seem to indicate reason for refusing to give full faith and credit. Any fraud which occurred in that case has no place in tainting the legitimate results of the decedent's request in the instant case. Even conceding that the purpose for the adoption was to deceive and conspire to deprive Robert, the Court finds no legal justification for ignoring the adoption legitimately carried out in our sister state of Michigan. Even looking through the reams and pounds of files and paperwork and depositions, one is hard pressed to find any legal justification for ignoring the Michigan adoption. Indeed it smacks of a very small tail attempting to wag a very large dog. Based on the above findings of fact and considering the applicable law. It is thereupon,

ORDERED:

The Court finds for the Respondent, and denies the Petition.

The Court reaffirms its prior finding that no forger was involved.

The Court finds that there was a presumption of undue influence which was more than adequately rebutted.

And finally, the Court finds that there is no legal basis for refusing to give the Michigan adoption full faith and credit.

ORDERED in Chambers this — day of December, 1986, at West Palm Beach, Palm Beach County, Florida.